Yes. May I please the court, Katie Loberstein for the appellant, Mr. Merrick. Before I begin, I'm going to try to reserve three minutes for rebuttal. I plan to devote my time... You are a law student from... Seattle University School of Law. Seattle University. Well, thank you very much for doing this. Oh, thank you for the opportunity. I plan to devote my time today on the court access claim, unless the court has any questions on the Ralupo claim. Your Honor... I do have a question on the Ralupo claim. Yes, Your Honor. And it has to do with the other opportunities, if there were, to have communication with clergy without being monitored. There's some information in the briefing that suggests that there were other ways that he could have talked to his clergy person, either by mail or otherwise, without being monitored. And I'm wondering what the record shows about that. Yes, Your Honor. Mr. Merrick's counsel... I'm sorry, Mr. Merrick's clergy lived in Oklahoma and as a proper inmate with limited resources, he was unable to have his clergy visit him at the prison in person. In Holt v. Hobbs, the Supreme Court held that the availability of some ways of practicing a religion does not excuse the imposition of substantial burdens on other ways. So even if he could practice the religion through mail or in person, that doesn't negate a potential substantial burden here by being unable to have unmonitored phone calls. Well, I'm trying to understand whether your position is a theoretical one. That is, yes, he can exchange unreviewed mail, but that's still a substantial burden because he can't have unreviewed phone calls, or whether you're saying he had no unmonitored opportunities at all. Mr. Merrick stated that private confessional calls were a requirement of his religious practice, and so... That still doesn't answer my question. Did he have mail opportunities, M-A-I-L, snail mail? I am not sure. I believe that he did have mail opportunities, however he's claiming... For unmonitored communication. I'm unsure of that point, but I believe so. Thank you. Thank you. If the court has no further questions on Ridlupa, I can move to the court access claim. Your Honors, Mr. Merrick is a pro se inmate who timely and diligently prepared a motion for reconsideration in his criminal appeal, but who was unable to file that motion with the court because Defendant Lilly, the supervisor in charge of providing assistance to inmates, legal assistance to inmates at the prison, took it upon herself to inappropriately assume the role of gatekeeper to the court, and she repeatedly refused to file it. Are you challenging... I don't take you as challenging, although I'm curious about why this is okay. The whole process of having the court decide whether somebody's pro se or not. In other words, why don't they just send it to the court and let the court worry about it? That is our position. Is that what you're challenging? Yes, Your Honor. I'm sorry? Yes, Your Honor. Defendant Lilly is a ministerial position. She has a ministerial position at the prison. Her job is to assist inmates with filing. ILS was created in response to Bounds v. Smith to assist inmates. Her job is not to screen orders for the court, that is for the court to determine. She should have filed the motion, and if the court determined that Mr. Merrick inappropriately filed it, then they could have refused it. But this was not something Mr. Merrick... My other major question about this claim is what's the remedy? I mean, I understand there's a lot of issues about whether it's a good claim, but let's assume for the moment it's a good claim. Doesn't there have to be some feasible remedy? Mr. Merrick is asking for a declaratory judgment, nominal damages, and attorney's fees, Your Honor. Declaratory judgment of what? What would the court declare? That his access to courts, his constitutional right of court access was violated. I'm curious as to what facts, in your view, support more than negligence. It appears to me that Lilly thought that the petition for review and motion for reconsideration was a single document and was negligent in not really understanding that it was two separate documents. Where is there something more than mere negligence? Yes, Your Honor. This court, as well as the first, sixth, seventh, tenth, and eleventh circuits, have all found actionable conduct when prison officials engage in a deliberate course of conduct that has an immediate and obvious effect on an inmate's right of court access. All right. I'm asking you exactly about deliberate. If someone is handed a piece of paper and thinks it's X when it's actually X plus Y, and they're sloppy, why is that deliberate indifference? Well, first, Your Honor, if this was a mistake by Lilly, it was an unreasonable mistake given her position as supervisor of inmate legal services. She'd worked there for 12 and a half years. She was in charge of training legal assistants to assist inmates at the prison. Given that, it's unreasonable for her to mistake a motion for reconsideration from a petition for review. Additionally, her actions before that mistake indicate a level of intentionality. She refused to file his initial request, even though Mr. Merrick indicated no less than eight times that he was filing pro se. She refused in response to his filing of his first grievance on November 14th, and again, in response to the escalation of that grievance on December 6th. All of this is intentional conduct. For example, the Tenth Circuit in Simpkins held that a prison official acts intentionally after she withheld an inmate's mail when he was transferred to another facility, and that was despite the fact that the prison official mistakenly thought that she was following prison rules. And so that was also a mistake. But this is why I asked you the question at the outset. It seems to me that if your position is that she was impeding access by simply not sending it on the first time, then the fact that she made a mistake later isn't really pertinent. The point is that if she didn't have any role or proper role in determining whether he was pro se or not, then everything that happened afterwards is sort of irrelevant. She just should have sent the first one on. Yes, Your Honor. That's correct, Your Honor. Whether he was pro se or not, and whether she was mistaken about it or not. Correct. Mr. Merrick's rights were violated when Lilly initially refused to file the motion. Everything else has just exacerbated the situation. And not just because she was mistaken, even understandably mistaken, about whether he was pro se. Correct, Your Honor. Even if she was. Correct. Your Honor, additionally, the district court erred in granting summary judgment to the defendant because the undisputed facts show that Lilly's refusal to file Mr. Merrick's motion for reconsideration frustrated his ability to litigate his case. The district court erred by concluding that Lilly's conduct did not prevent Mr. Merrick from filing his motion. And in reaching this conclusion, the court held Mr. Merrick to an overly demanding standard that is contrary to existing law. In Lewis v. Casey, the Supreme Court held that a constitutional violation occurs when prison officials hinder an inmate's ability to access the courts. Neither the Supreme Court nor the Courts of Appeal require plaintiffs to show that the relevant official acts interfering with their court access erected an insurmountable barrier. The district court focused here on what more Merrick should have done instead of focusing on what Lilly did do. And indeed, even if the inmate's diligence was pertinent to this conversation, Mr. Merrick did act diligently. He submitted the motion well before the filing deadline and indicated multiple times that he was pro se. Upon the initial rejection, he immediately filed a grievance, and he escalated that grievance after he was refused. And in that grievance, he indicated that, erroneously, he indicated that the time to file the motion to reconsider had lapsed, and he was no longer interested in having the motion for reconsideration filed. Yes, Your Honor. At that point, Mr. Merrick believed that it took at least a week to resolve grievances, and that's why he stated what he stated. And indeed, this took over a month to resolve. In addition, Mr. Merrick did state in his grievance when the motion was due, so anyone seeing the grievance could have seen that it was not yet due and tried to remedy the situation. The government's brief places a lot of emphasis on the fact that he didn't submit either with the request or with the grievance the actual opinion by the court that said that he could file a pro se motion to reconsider. He says he gave it to Lily, I think, on the 10th. Go ahead. Yeah, he stated that he showed it to a grievance officer on November 8th and November 20th. But even if he had submitted, even if Lily did not see the grievance, it is in the record that she did see the court of appeals order on November 13th, which was still a day before the filing deadline. And at that point, she still refused to file. So having a copy of the court of appeals order did not change anything. Additionally, there's no requirement that Mr. Merrick show ILS a copy of the court of appeals order, and Mr. Merrick was not instructed to do so by Lily. Finally, your honors, the district court erred in granting summary judgment to the defendants because Mr. Merrick presented evidence demonstrating that his motion for reconsideration contained non-frivolous claims. The district court erred in concluding that Mr. Merrick had not shown that his motion for reconsideration was non-frivolous because in making that determination, the court failed to substantively consider Mr. Merrick's actual arguments. Instead, the district court improperly focused on whether Mr. Merrick's arguments were repetitive. But whether an argument is repetitive is not the correct analysis for determining whether that argument is frivolous. Moreover, Arizona courts generally do not even consider arguments raised for the first time in a motion for reconsideration. They were directly focused on what the court had determined. Correct. So in that sense, they weren't repetitive because the court hadn't determined anything before. That's correct, your honor, but they didn't. So they were repetitive only in the sense that they were the same general issues. Correct, your honor, but you're right. One of the things Mr. Merrick asserts in his motion for reconsideration was that the Arizona court of appeals incorrectly assessed FERA, the Free Exercise of Religion Act. And indeed, the Arizona court of appeals stated that that defense was only available to government employees. And Mr. Merrick correctly pointed out in his motion for reconsideration that FERA was available to all Arizona citizens as a defense to criminal conduct. And indeed, that was ruled on by in a controlling opinion by the Arizona Supreme Court. So that on its face was a non-frivolous claim that Mr. Merrick asserted in his motion for reconsideration. If the court has no further questions, I'd like to save the rest for rebuttal. Thank you. Thank you. Good afternoon. My name is Joseph Vigil. I'm with the Maricopa County Attorney's Office. And we represent, obviously, Carol Lilly and the Sheriff's Office in relation to the claims in this lawsuit. The central access to the court's claim in the district court determined that Carol Lilly, as the court, as the judges said, acted at most it was a mistake. And that she erred in not filing the motion for reconsideration initially. The court, the district court, did not determine whether or not her mistake or negligence was enough to constitute a constitutional violation. The district court deferred that ruling and instead focused on whether or not there was an actual injury that was shown by Mr. Merrick. But the mistake notion begins from the proposition that she had some role in, some appropriate role in screening the defendant. And that she was using this male to see whether or not he was properly pro se. Right? Your Honor. Why does she? I would agree that Carol Lilly's actions when she initially received the motion for reconsideration is taken into account here. But the question becomes whether or not her actions were the proximate cause of Mr. Merrick not getting the motion for reconsideration. But wait a minute. But you began, I want to begin where you began. Where you began was to say that she was at most negligent. And I'm questioning that by saying, well, she deliberately took it on herself to screen the male for whether he was pro se or not. And the question is why does she get to do that? Your Honor, we'd have to back up to understand why she would do that in that when Mr., excuse me, Mr. Merrick initially filed his appeal, the court of appeals, Arizona Court of Appeals specifically named Tyrone Mitchell as his counsel in that appeal. Well, fine. And if he's wrong and if he's filing something that he's not entitled to file because he's really not pro se, that's the court's problem. Why is it her problem? In terms of access to the court. I think, Your Honor, you have to look at the larger picture of who can file a document pro se and if Carol Lilly is in it. But why is it her problem whether somebody can file it pro se? Why can't she just send it off? And, Your Honor, she could have. As to access to the courts. I mean, that's sometimes a debatable question. Why is she deciding it? She was basing it based upon, as she indicated, rulings of the prior court that indicated he was represented by counsel, that he was given one specific time to file a supplemental brief to the honors brief that was filed. She's making a legal ruling about whether he was entitled to file this paper. Is that her role as opposed to seeing that he has access to the court? No, Your Honor, but I disagree with the assessment that she's making a legal ruling in that she's following prior court orders that appointed him counsel. And if the court feels that was a negligent act, then the next step that we need to take is determine, in which the district court did not determine, is whether or not that negligent act constituted a constitutional violation. Instead, what the court did is jump to that next component of the test and determine whether or not there was an actual injury afforded to Mr. Merrick by the fact that the motion to reconsideration was sent back to him with six days left to have it filed. Once that was returned to him, Mr. Merrick... He did something. He filed a grievance. He didn't do nothing. He did something. And I didn't say he didn't do anything. He did file a grievance, but in that grievance, as Judge Curiel indicated, he simply filed a grievance and indicated that there was nothing else that could be done. And as a matter of fact, he did, in relation to the petition for review, which was filed, what he did with that is he attached a copy of that order from the Arizona Court of Appeals, which indicated... I read both his complaint and his declaration as saying that he did submit it on December 10th. Did I misread that? On December 10th? On November 10th. No, November 10th. I don't see anything in the record that indicates he submitted it on November 10th unless that was the date he submitted his petition for review. And in looking at the record, the petition for review was submitted... It was received by Inmate Legal Services on November 13th, and, Your Honor, you are correct. The date he gave the Inmate Legal Request to the guards at the jail was November 10th, and that's at ER 74, which is a copy of the Inmate Legal Request form. That was received by Inmate Legal Services, Carol Lilly's office, on November 13th, 2012, and submitted with that was a copy... He says in his affidavit, the defendant was sent a copy of the memorandum decision on 11-10-12. That's what he says. Now, I don't know what it means, but that's what he says in his Statement of Uncontested Facts. And, Your Honor, I'm not sure what exactly he means by if he meant he sent a copy of that alone. I do know, as I indicated at ER 74, there's an Inmate Legal Request form that was submitted to file the petition review. Attached to that copy of the petition for review was a copy of the memorandum decision by the Arizona Court of Appeals, so that would have been on November 10th, 2012, Your Honor. When Carol Lilly received the Inmate Legal Request form, she did also receive that copy of the memorandum decision, and the petition for review was filed. It is our contention that Mr. Merrick does bear some additional responsibility to correct an error that was made by Carol Lilly. He did not. In his grievance, he indicated... Where did that responsibility come from? Do you have a case that stands for that proposition? Your Honor, there is no case law that indicates whether or not he has a responsibility to do it or not. This case is fairly unique in the line of cases that were cited, both by Mr. Merrick and by us, in that nothing was actually filed here. We never got a motion for reconsideration filed, so there was no rejection of it for being late. In the case law that was filed by Petitioner and by us, all those cases... For example, I think it was the Simpkins case that counsel referred to, the mail was held on past the time frame for filing. It was submitted for filing, and at that time, the court rejected it for being too late. Now, the courts have said that where there is an opportunity to correct an error that was made by Mr. Merrick, then that should be taken, and access to the courts is not denied. And I believe that was Judge Easterbrook in the... But I'm just trying to wrap my head around this notion that Mr. Merrick should have done something else. Given that he did what one would expect he would have done, that is, he prepared the motion for reconsideration, he offered it up to the legal services section, asked them to file it, then it wasn't filed. He then filed a grievance. There's a question as to how much of an onus are you going to place on Mr. Merrick, given that the obligation that's placed on the prison is to... They have an affirmative duty to permit access to the courts. Your Honor, I think that what we have here is an unfortunate... And we give Mr. Merrick credit in that he did get that motion for reconsideration in, and he spent plenty of time for it to be filed. When it was returned to him, what he knew was that Carol Lillie thought he was represented by counsel. And whether it was a mistake for her to do so, to even take that leap, or otherwise, what Mr. Merrick easily could have done, which he did with the petition for review, is submit the order that said he could, that Tyrone Mitchell was no longer his counsel, and that he could file a motion for reconsideration or a petition for review. But every time he dealt with Lillie afterwards, she kept insisting he was wrong anyway. Your Honor... It's nice to say that she was just negligent, but he did correct her four different times about this question, or several different times, about whether or not what she actually sent was what he wanted her to send, and he explained it pretty clearly. And they kept saying, no, you're wrong, until they sent it out to some outside person. And, Your Honor, what happened there, and for whatever reason, Ms. Lillie mistakenly thought what she did was cure what he was asking for by filing the petition for review. And then when he said, no, you're wrong, this was a motion to reconsider, she said no. Somebody said no. I don't know who said no. And, Your Honor, they said no, and that was a mistake on their part. They should have realized that a motion for reconsideration, the title is completely different from a petition for review. I know that. The Court knows that. However, what she thought, for whatever reason, was that once she got that petition for review, she thought he was talking about the same thing, and we know that the titles are different. And she made that mistake, but nowhere along that line either did Mr. Merrick indicate that the motion for reconsideration needed to be refiled. Let me ask you, with respect to the standard that we should apply, should it be a negligence standard or a deliberate indifference standard? Your Honor, if you're going to create a standard for an access to the Court's claim, whether it's under the First or Fourteenth Amendment, I would say that the Court should apply a deliberate indifference standard. In reviewing the case law, there's no cases that indicate for due process violations or other access to the Court's violations that mere negligence is necessarily enough. Like Section 1983 cases in general, there's got to be something more than just a mere negligence. For example, in medical cases, there has to be deliberate indifference to a medical need or deliberate indifference to an inmate's safety. There is reference to the Dorn case, which also references the Ruiz case, and I believe that's out of the Seventh Circuit. Or no, the Ruiz case is out of Southern District of California, where they suggest that mere negligence is enough. However, that was from a report and recommendation of a district court that was not adopted by a district court. And I would say that the majority of the circuits have indicated mere negligence in an access to the Court's claim, whether it's under First or Fourteenth Amendment, needs to be more than mere negligence. Can I just ask you clearly, what is it you're saying is the mere negligence? I mean, there were two different mistakes here, right? One of them was the mistake about whether he was pro se or not, and the other was the mistake about whether she had filed the right paper ultimately. Which one are you saying is mere negligence for both of them? Your Honor, I would say the negligence part comes into play, in my opinion, and I think in the district court's opinion, when she mistook the motion for reconsideration for the petition for review. But that was after the access was denied. That's what I don't understand. That may go to the injury question, but it doesn't go to the question of when the access was denied as to what it was he was trying to file. That's correct, Your Honor, and I do think that if you're looking at her actions in returning the motion for reconsideration on November 7th, that at most that can be considered negligence, especially if Your Honor and I know Your Honor does not feel she probably should have taken that step and decided that he was not pro per and that he was represented. I would posit that that is mere negligence in this case and that that would not constitute some deliberate or intentional action that would justify finding her in violation of the Fifth Amendment or the access to the court's claim. With that said, Your Honors, I know I'm running out of time. I don't know if the court has any questions regarding the RLUIPA claim. We, of course, did not have a chance to respond to that. The district court in addressing that claim dismissed that on their own during the screening. I guess my main question about that is, I mean, one has a healthy suspicion about the sincerity of this claim given the fact that the conviction was essentially for the same kind of communication, but is that properly done at a screening stage? Your Honor, I've never seen it done at the screening stage. I don't know if it's proper for the district court to go beyond the record and determine that. I would say if there's any case for that it would probably be this one. However, I did not see any quite honestly any case law that says one way or the other whether or not the district court at screening can go beyond what they're looking at. So therefore, if we were to uphold this, it would have to be on the ground that assuming his sincerity, this was not a substantial interference with his religion. And given the level at which the Supreme Court has been recognizing these claims, that seems a difficult one, doesn't it? Your Honor, I would agree with you. I would say that the question that was asked by I believe Judge Graber regarding whether or not there was any indication he had access to other means to confess or to seek spiritual guidance. Mr. Merrick as a matter of fact in his, I can't remember if it was his motion for reconsideration or his initial appeal, indicated that the letters that he was writing to his I think it was his prior pastor or clergy constituted just that, constituted his confessions and his spiritual guidance and that I think one of the claims was Well that's what I was asking about being unmonitored and it sounded like opposing counsel was stating that those did appear to be unmonitored communications by mail. Is that your understanding as well? Your Honor, that is my understanding but I don't know one way or the other. I don't think there's anything in the record beyond what I just indicated that he was able to communicate via letter with his prior clergy. Well how did that get into the record if we're only looking at a screened complaint? In his record is there was attached his motion for reconsideration and I believe that's where it's indicated at. Your Honor, I'm sorry I don't have a citation directly to the record for that. Thank you very much. Thank you, Your Honor. Your time has expired. We will hear your rebuttal argument. We'll give you one minute. You have 3 minutes, 2 minutes and 59 seconds to rebuttal. Just in response to Judge Graber's initial question on the Ralupa claim we checked the record and at ER 267 Mr. Merrick does allege he was offered to write to clergy but it's unclear from the record whether those letters would have been unmonitored and that's something that could be developed on remand but in any event Merrick does allege that his religious practice requires him on monitored phone calls and that is on ER 263. Additionally, in response to your point, Judge Verzon, regarding whether or not it's appropriate for someone in the least position to be screening pro se documents in ex parte hall which is not in the brief but that's at 312 US 546. The Supreme Court said whether a petition for writ of habeas corpus addressed to a federal court is properly drawn and what allegations it must contain are questions for that court alone to determine. That's not a question for a prison official to determine. Moreover, in response to Well let me ask, with respect to access to court, that presupposes that there's a matter pending for which the inmate has a right to offer a matter to the court, correct? Well, access to courts anticipates that there's something that's pending, correct? And that the inmate would have the right to pursue, and maybe that's the argument here, whether or not Ms. Lilly is becoming a gatekeeper in determining whether or not it was appropriate for Mr. Macbeth to proceed, but it seems to me that the access to courts presupposes to a certain extent the legitimacy of the proceedings, the existence of the proceedings, and the right of a person to pursue this particular cause of action to the extent that here there's been a determination and in the normal case, instead of someone has an attorney, then in that case his access to the courts is being protected by the attorney. Correct? Yes. Are you saying that in that situation that if he had an attorney, and his attorney was litigating on behalf of the inmate, that the inmate would still have a right to independently file separate motions for reconsideration and separate motions? Potentially, Your Honor. It would speak to the actual injury element because if the inmate has no access to the court, then that would speak. In this case, Mr. Merrick was unable to file a motion for reconsideration because of Defendant Lilly's actions, whereas if he had an attorney, and he still could have filed it with the attorney, and the attorney still filed it, then he wouldn't have the actual injury if Lilly had also refused. But as a threshold matter, you're... And he also wouldn't have a viable, I mean, under the law, he wouldn't have any viable court remedy, and therefore he wouldn't have any denial of access for that reason either. So it would bump out at a later stage, essentially. Yes, Your Honor. Okay. And I see my time is running out, but I just wanted to rehash the intentional versus negligent. Here, Defendant Lilly applied the rule of pro se inmates. She applied the rule that she was only to assist pro se inmates, and she determined that Mr. Merrick was not pro se, and that wasn't for her to determine, and that was an intentional action. She did not act negligently. Courts find negligence where a mail document is inadvertently lost. Here, Defendant Lilly took deliberate actions which led to Mr. Merrick's denial of access. Thank you, Your Honor. Okay. Thank you very much, and thank you and your school again for helping us out with our pro bono program. And the case of Merrick v. Inmate Legal Services is submitted, and we are in recess. Thank you.
judges: Graber, Berzon, Curiel